## JOHN M. BURKE

Attorney at Law

26 Court Street - Suite 2805
Brooklyn, New York  11242
Tel:  (718) 875-3707
Fax: (718) 875-0053

February 10, 2023

Honorable Richard J. Sullivan
Second Circuit Court of Appeals
500 Pearl Street
New York, New York  10007

Re.:  <u>U.S.</u> v. <u>Gregory Reed</u>
11-CR-487

Dear Judge Sullivan

      I am writing on  behalf of my client Gregory Reed to request that the Court be as merciful as possible when he is resentenced.  Mr. Reed deeply regrets his crime and is committed to leading a constructive life in the future.  During his lengthy stay in prison he has matured and now accepts responsibility for his criminal acts.  The defense believes that a sentence of <u>20</u> years would be sufficient punishment and satisfy the interests of justice and the community.  Mr. Reed asks the Court to fashion a sentence in accordance with 18 U.S.C.  3553(a) that is no longer than necessary and permits him to make a constructive contribution to society.

I.     <u>THE ADVISORY SENTENCING GUIDELINES</u>

      Initially the Court imposed a sentence of 20 years for Conspiracy to Commit Hobbs Act Robbery (Count I) to run <u>concurrent</u> with a sentence of <u>20</u> years for Mr. Reed's conviction of Attempted Hobbs Act Robbery (Count II).  Recent Supreme Court decisions have held that these two offenses are not predicate crimes of violence and Mr.  Reed's conviction under 18 U.S.C. 924(j)  must be vacated. In order to satisfy the onerous guideline calculations reflected in the Pre-Sentence report the Department of Probation has recommended that the Court "stack" the 20 year sentences for the Conspiracy (Count I) and  Attempt (Count II) and run the sentences consecutively.  The defense contends this approach is unduly harsh and urges the Court to reject the advisory non-binding analysis suggested by the guidelines.

The Department of Probation has calculated that Mr. Reed's final offense is 43 and also considers him to be a Criminal History Category VI offender. This analysis yields a guideline range of life in prison. The defense objects to this analysis on two grounds. Since the two remaining offenses, Conspiracy to Commit Hobbs Act Robbery and Attempted Hobbs Act Robbery each carry a maximum sentence of twenty years the total punishment for Mr. Reed's crimes cannot exceed 40 years. Therefore his suggested guideline range cannot be life and cannot be more than 480 months.

It is also important to note that Gregory Reed has agreed to take responsibility for his crime and appreciates the severity of his criminal acts. He admits to participating in the charged Hobbs Act Robbery Conspiracy and the Attempted Hobbs Act Robbery of December 1. 2007. Admittedly, Mr. Reed's acceptance of responsibility at this late date cannot prevent the Government and the Court from expending time and resources on the litigation. However the defense believes his confession of guilt provides a form of closure for the family of the deceased and all parties involved in the litigation. The defense believes this Court should consider Mr. Reed's acceptance of responsibility as a mitigating factor when setting his prison term at re-sentence.

II.   THE DEFENSE ASKS THE COURT TO SET
      A SENTENCE FOR GREGORY REED  THAT
      IS SIMILAR TO THE MURDER SENTENCE
      OF OTHER FEDERAL OFFENDERS

Although Reed was convicted of offenses relating to Hobbs Act Robbery the sentencing guidelines for first degree murder were used in calculating his punishment. U.S.S.G. §2B 3.1(c)(1), 2A1.1. Gregory Reed was sentenced to life without parole on January 14. 2013. He has already spent a significant amount of time in custody (approximately 13 years) and hopes to have his life sentence reduced. In fiscal year ("FY" 2020 **the** national **average** length of a **federal sentence for murder** was approximately 21 years and the median sentence was approximately 19 years. U.S. Sentencing Commission, Preliminary FY 20 4Th Quarterly Sentencing Update 9 (Jan. 4, 2021). The numbers are not significantly different for FY 2019. In that year, sentences for murder averaged just over 21 years nationally, and the median was 20 years. U.S. Sentencing Commission, 2019 Federal Sentencing Statistics 11 (2020). The recent average federal sentence for murder is slightly over 20 years . U.S. Sentencing Commission, Preliminary FY 21 4th Quarterly Sentencing at 9 (Dec. 7, 2021).

Although Reed's crime was very serious it is important to note that he did not discharge the shot that felled the deceased. According to Court records Reed fired his gun in the air in attempt to prevent one of the drug dealers from fleeing the robbery. One of his

co-defendants deliberately fired upon Mr. Navarro causing his demise.  P.S.R. parg. 14[1]. Although Reed's actions were criminal and deplorable he did not intend to kill anyone when he entered the premises at 1275 Lafayette Avenue, Bronx, New York.  Although he is legally responsible for participating in the attempted robbery and the consequences of that robbery   a sentence of twenty years would be sufficient punishment for his crime.

III.   GREGORY REED WILL BE AN
       ELDERLY OFFENDER WITH A
       REDUCED RATE OF RECISIVISM

Gregory Reed is currently 41 year old and if the Court grants him a sentence reduction to 20 years he will be almost 50 years of age upon his release from custody.  The sentencing Commission has observed that recidivism rates decline relatively consistently as age increases. "There is a statistically significant drop in recidivism for offenders aged 45 to 54 compared with 35 to 44 year olds and rates for those aged 65 and older are even lower."  Ettie Prell, Iowa Recidivism Report:  Prison Return rates, FY 2013 7 (2014); Appellate Courts in this Circuit and elsewhere have held that an offender's advanced age diminishes the public safety benefit of keeping them incarcerated.  United States v. Jenkins. 855 F/3d 181 (2nd Cir. 2017); United States v. Howard, 773 F.3d 519 (4th Cir. 2019).

At the age of 50 Mr. Reed will be well beyond the time of life when most criminals are active.  A sentence of 20 years would serve the interests of justice and satisfy the need to protect the community.

IV.   IN VIEW OF THE COVID-19 PANDEMIC'S
       IMPACT UPON PRISON CONDITIONS THE
       COURT SHOULD CONSIDER REDUCING
       HIS SENTENCE

When the Court sentenced Gregory Reed in 2012 it could not anticipate that he would be serving his time during the worst pandemic in the last 100 years.  Simply put each day Mr. Reed has spent in custody during the Covid crisis (almost three years) was far more onerous than a day spent in normal custody and his sentence should be adjusted due to his harsh conditions of confinement.  Mr. Reed has been incarcerated at U.S.P. Canaan for many years and he has suffered through terribly harsh conditions of confinement throughout the COVID-19 pandemic.  The world-wide COVID-19 pandemic is unquestionably beyond anything contemplated by drafters of the Sentencing Guidelines. Conceptually, the motion of a "just punishment" was never meant to include serving a prison sentence in the midst of a global pandemic.

---

[1] P.S.R. refers to the original Pre-Sentence Report of November 13, 2012.

There is no need to reiterate the staggering facts and statistics that have inundated the Courts regarding the spread and lethality of the Covid-19 pandemic. For the public at large, the threat has proven more than theoretical. That threat, however, is magnified for those in custody. Since March 2020, federal prison systems has been in various states of lockdown with limited time to shower, make legal or personal calls, etc. Mr. Reed confirmed wretched and brutal conditions of confinement in at U.S.P. Canaan, often going days without a shower and waking up in the middle of the night to find his jail cell invaded by rats and roaches. Particularly harsh was the near total isolation where he was confined to his jail cell for days on end and periods of time with little to no communications with his family. That painful isolation has left irreparable damage with some of his family members as many of them have essentially forsaken him.

Time spent under such intense emotional strain simply cannot be equated with the anticipated punishment represented in the sentencing guidelines. It would be unjust to discount the reality. Reduced to its essence we respectfully submit that each month served in US.P. Canaan during this pandemic is "worth more" when considering the requirement of just punishment than a month spend under more "normal" circumstances.

In <u>U.S.</u> v. <u>Aracena De Jesus</u>, Judge Englemayer granted a substantial downward variance to a defendant in recognition of the harsh conditions of confinement during the Covid Pandemic:

> Finally, I am mindful that you have served our time in prison so far during the worst pandemic in this country during the past 100 years...Bottom line your time at MCC was way harder than anyone intended when you were detained following your arrest. Any mature system of justice, any thoughtful judge in imposing the reasonable sentence here would have to recognize the unexpected and regrettable ardors that you have experienced since your arrest[]

<u>U.S.</u> v. <u>De Jesus</u>, 20-CR-19 (PAE)(July 1, 2020 Sentencing Transcript) ECF No. 27

Other Judges within this district have imposed reduced sentences based on the Covid-19 pandemic and the resultant harsh pretrial conditions of confinement. *See e.g.* <u>U.S.</u> v. <u>Morgan</u>, 19-CR-209 (RMB) (S.D.N.Y. May 5, 2020) (reduced sentence in part based on the pandemic conditions, 15 month sentence where guideline range was 41 to 51 months). <u>U.S.</u> v. <u>Pierson</u>, 14-CR-855 (LTS) (S.D.N.Y. May 4, 2020) (same rationale, time served sentence where guideline range was 15 to 21 months). We respectfully submit that the brutal conditions of confinement in federal prisons during the Covid-19 pandemic is a factor Your Honor should consider when deciding Mr. Reed's request for a reduced sentence.

## GREGORY REED ASKS PERMISSION TO JOIN WITH CO-DEFENDANT'S STENCING APPLICATIONS

Gregory Reed seeks to joint in those sentencing applications and requests made by his co-defendant Ronnie Gonzalez to the extent that they are applicable to his case.  The defense realizes that each defendant has his unique personal history and criminal past but seeks to join in any legal request made by his co-defendant that could be beneficial to Gregory Reed.

## V.   THE §3553 FACTORS

As this Court is undoubtedly aware the United States Supreme Court decision in United States v. Booker, 541 U.S. 220 (2005) has reshaped the way a sentencing judge can impose a sentence.  The sentencing court may consider the guideline range as well as any basis to depart from that range.  However, the court is no longer required to impose a sentence within that range.  In fact the federal sentencing guidelines are but one factor among several in determining an appropriate sentence.  Kimbrough v. United States, 552 U.S. 85, 109 (2007).  The guidelines are only the "starting point and initial benchmark." Id. citing Gall v. United States, 552 U.S. 38, 50 (2007).  "Sentencing courts are not to 'presume that the Guidelines range is reasonable,' and instead they must make an individualized  assessment based on the facts presented." United States v. Thavaraja, 740 F.3d 253, 259 (2d Cir. 2014) (internal citations omitted).  It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the §3553(a) factors. Id. Kimbrough, 552 U.S. at 109, citing Gall, 552 U.S. at 5.

The defense believes Mr. Reed's personal history, acceptance of responsibility and efforts at rehabilitation are important mitigation factors the Court should consider at resentence.

## PERSONAL HISTORY

The Department of Probation outlined Mr. Reed's personal history in the original pre-sentence report.  The defense would like to highlight a few salient features of Mr. Reed's family background that made it difficult for him to become a successful adult.

Gregory Reed's early life was chaotic, tumultuous and violent.  His parents were both addicted to heroin and alcohol.  There was verbal and physical abuse in the home. Gregory was the youngest child in the family and often witnessed his parents quarreling and fighting, at times Gregory was also the target of their abuse.

Although his siblings were raised with his parents, Gregory was placed in foster care for the first few years of his life.  When Gregory was 5 years old the family was evicted from their apartment and forced to live in a shelter.  His father was stabbed and murdered

when Gregory was 10 years old and shortly thereafter Gregory began to exhibit behavioral problems. He was subsequently diagnosed with Attention Deficit Disorder and medicated with Ritalin.

When Gregory's mother and father were unable to fulfill their parental responsibilities the children had no extended family to care for them:

> "We also had the hardship of being "all we had". Both of my parents' parents', our grandparents died before most of us were ever born. Our last surviving grandparent, my mother's father, passed when I was only months old. I am the second oldest. Both of my parents were also the only children each of their parents had, making them only children and leaving us with no aunts, uncles or cousins as a village of support for us or them. No alternatives for a positive role model or as a source of other possibilities that on might emulate."

Letter of Simone Reed

Shortly after his father's murder Child Services authorities investigated the family and placed Gregory with Child Care agencies. He was to spend he next few years being shuffled from institution to institution.

During his long period of incarceration on the present case Gregory has been separated from his daughter Briana (age 12) and the rest of his family for many years. He still maintains contact with Briana, her mother Aneetra Beaulieu and a few of his siblings. They are aware of Gregory's legal situation and hope for a reduced sentence.

The mark of any culture can be measured by the way it treats its poor and disenfranchised members. Although Gregory Reed's Dickensian child hood does not excuse his criminal acts or make him less guilty, it is a mitigating factor the Court should weigh when setting sentence.

## GREGORY REED ACCEPTS
## RESPONSIBILITY FOR HIS CRIME

In our analysis of the sentencing guidelines the defense alluded to Mr. Reed's admission of guilt and acceptance of responsibility for his crime. The defense realizes that it is possible to be cynical and characterize Mr. Reed's admission of guilt as belated and self-serving. However, people mature over time and prison has always been a place where a degree of self-reflection is inevitable. The defense contends that Mr. Reed's remorse is sincere and truthfully expressed in his personal letter to the Court.

> I would like to start off by saying I know my words cannot
> fix the mistakes I have made.  I do hope that you can hear
> the honesty and growth in them, Sir.  I stood in front of you
> 10 years ago lost and troubled, and most of all due to my
> actions a young man lost his life…I would like to end this
> letter by saying no matter what sentence Your Honor imposes,
> I take full responsibility for my actions which I have always
> deeply regretted, with the sincerest apology.

Letter of Gregory Reed

Mr. Reed initially had a difficult adjustment to prison life and often found himself in situations that required him to protect himself.  On one occasion he was disciplined for having intimate contact with his paramour during an inmate visit.  However, during his 13 years in custody Gregory Reed has matured and come to realize that much of his prior life on earth was wasted on anti-social activities.  Although U.S.P. Canaan has a limited offering of programs Mr. Reed has shown his commitment to rehabilitation through work and study.

In an effort to rehabilitate himself Gregory Reed has spent hundreds of hours working in prison.  He has worked as a landscaper, painter and snow shoveler and received positive evaluations for his work.  In order to prepare himself for life in the free world Mr. Reed has taken numerous courses sponsored by the Bureau of Prisons.  He has successfully completed courses in Automotive Maintenance, Barbering and Nutrition.  Mr. Reed has also completed a course of study entitled Reviewing My Drug Use in an effort to curtail his need for illicit substances.

Gregory Reed intends to keep on working and studying in the hopes of becoming a useful member of the community upon his release.

VI.    THE PARSIMONY PROVISION OF
       18 U.S.C. 3553(a) SHOULD  BE
       IMPLEMENTED WHEN FASHIONING
       GREGORY REED'S SENTENCE

18 U.S.C. §3553(a) requires courts to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of this offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training.   A twenty year sentence would be sufficient punishment for Reed and provide adequate deterrence to anyone considering getting included in similar criminal activity.

Even though a sentence of this length is harsh it would still enable him to leave custody and build a constructive life.

<u>CONCLUSION</u>

Gregory Reed has committed serious crimes and he takes full responsibility for his criminal actions.  He has spent many years in prison but hopes to be permitted to re-join the free world in the not too distant future.  Gregory Reed beseeches the Court for mercy and asks the Court to reduce his sentence.

Respectfully submitted,

s/
JOHN BURKE
Attorney for Gregory Reed

LETTERS IN SUPPORT

TRULINCS  65170054 - REED, GREGORY - Unit: CAA-F-A

--------------------------------------------------------------------------------------------------------

FROM: 65170054
TO:
SUBJECT: Letter to Judge Sullivan
DATE: 09/29/2022 01:34:44 PM

To:  The Honorable Richard J. Sullivan

From: Gregory Reed

Your Honor:

    I would like to start off by saying I know my words cannot fix the mistakes I have made.  I do hope that you can hear the
honesty and growth in them, Sir.  I stood in front of you 10 years ago lost and troubled, and most of all due to my actions a
young man lost his life.  No amount of sorry can change that fact. throughout These last 13 years of my imprisonment I have
faced many ups and downs.  I'm using these hardships and the time to change the way I once was and to better myself as a
man, and as a father.  I'm now putting as much positive things in my life, even though I am often surrounded by negativity.  I
struggle every day to change and to rehabilitate myself into a productive person.  I'm not perfect by any stretch of the
imagination, but I have now adopted a more positive attitude to where failure does not consume me and stop my growth.  I now
face my demons head on.  When your Honor first gave me this sentence I had the I don't care attitude.  "I'm a lifer in one of the
worst federal prisons in America."  So often I found myself engaging in fights, weapons, and assaults to prove myself, and most
importantly to survive.  But one day I had to ask myself, are you really doing this to survive, or are you just still living the street
life behind these prison walls.  So over the past 3 1/2 years I've been focusing on changing my life to better myself, and for my
kids and family.  I now engage in a more positive lifestyle.  I work as a head orderly to keep the prison sanitized to mitigate the
spread of COVID-19 and other diseases.  I have also enrolled into various programs.

    Your Honor, no matter what sentence is imposed, I hope that I may one day lead a life outside of here that can be
productive, not only to me, but for my children.  10 years ago when I stood in front of you, you said something to me that
allowed me to always believe in myself.  When the Government said that "Mr. Reed has no redeemable qualities", your Honor
stood up for me and said that "Mr. Reed does have redeemable qualities".  And that was one thing that I took from being given
a life sentence and used as a motivating force so when I fall I can get back up and try again; and to use my past as a stepping
stone to move to the future which I hope can be a more productive and useful one.

    Your Honor, I understand the magnitude of getting the chance to once again stand before you to have an opportunity to
impress upon you a chance to believe in me, to give me some hope to get out of prison with some life left to be able to be a
impactful father and member of society.  I also understand how lucky I am to benefit from this recent change in the law.  Your
Honor, I take full responsibility for my actions, and apologize to my victims and their families.

    I have spent the last 13 years raising my children as an incarcerated father, which has been a challenge.  Now with one in
college, and one in high-school, they are productive in everyday life.  I have been blessed to have an impact on their lives.  I
know with a chance to physically be there I can have an even greater impact in their lives.  I hope that you still see me to be the
same man with the redeemable qualities that you once spoke of in your courtroom.

    Thank you for the time you took to read this letter, and for the opportunity to speak freely and openly.  I would like to end
this letter by saying no matter what sentence your Honor imposes, I take full responsibility for my actions which I have always
deeply regretted, with the most sincerest apology.

Thank you your Honor.

Sincerely,

Gregory Reed

Simone Reed

1852 Matthews Ave

Bronx, NY 10462

August 15, 2022

Re: Gregory Reed

To: The Honorable Judge Richard J. Sullivan

I, Simone Reed am writing this letter to you to provide some background information about Mr. Gregory Reed, who is my biological brother. We share the same mother and father, along with our 3 other siblings and 1 older sibling who my mother had prior to meeting our father.

We were born into the South Bronx during the 70s and 80s, when the Bronx was literally burning. Not only did we watch our borough burn, but we also saw the destruction and/or demise of our families, friends and their families due to opioid and subsequent to that, crack addiction and the ongoing violence that plagued the inner city. Such was the case in our own family. My parents, who were both high school drop outs, were both addicted to both heroin and alcohol. We were all raised by our parents, within the same household except for Gregory, who is the youngest of five children and was placed in foster care for the first several years of his life. In addition, my father was prone to physical violence with both my mother and us children. This was the form of discipline he used when he felt we disobeyed the rules.

Our family existed and subsisted on many hardships, besides that of violence. We also had the hardship of being "all we had"! Both of my parents' parents; our grandparents died before most of us were ever

born. Our last surviving grandparent, my mother's father passed when I was only months old. I am the second eldest. Both of my parents were also the only children each of their parents had, making them only children and leaving us with no aunts, uncles, or cousins as a village of support for us or for them. No alternatives for a positive role model or as a source of other possibilities that one might emulate. My father was a product of the streets. He did many things that you wouldn't want a child to emulate and as an adult as I think back,reflecting,  I think he knew the error of his ways. Even after over 40 years after his murder, which my younger brother witnessed, I still remember him constantly telling us, "Do as I say, not as I do!" Unfortunately, that's easier said than done and it's even more unfortunate that children learn what they live. So even though words matter, actions do too.

Thank you for taking the time to read and hear this request. It is much appreciated. It is an honor and a privilege for my family to get this opportunity to present this request and we are especially thankful for it. Again, I am submitting this letter on behalf of my baby brother Gregory Reed, in the hopes that you will consider the impact his upbringing has had upon his life and offer him an opportunity to be able to reunite with his daughter, who cannot recall seeing her father outside of a prison and also his siblings, who have not seen him in more than a decade. If further information is needed, please feel free to contact me at simonereed4@gmail.com or 917-532-9175. My home address is 1852 Matthews Ave #2FR, Bronx,NY 10462


Respectfully,

Simone Reed

```
 USPJ7                  *    INMATE EDUCATION DATA        *      11-01-2022
PAGE 001 OF 001 *                 TRANSCRIPT             *      10:59:08


REGISTER NO: 65170-054      NAME..: REED                    FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: CAA-CANAAN USP

-------------------------- EDUCATION INFORMATION --------------------------
FACL ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP DATE/TIME
CAA  ESL HAS    ENGLISH PROFICIENT           05-16-2013 1302 CURRENT
CAA  GED HAS    COMPLETED GED OR HS DIPLOMA   05-16-2013 1309 CURRENT

---------------------------- EDUCATION COURSES ----------------------------
SUB-FACL    DESCRIPTION                    START DATE  STOP DATE  EVNT AC LV  HRS
CAA         NUTRITION                      08-05-2022 09-28-2022   P  C  P    15
CAA         BEGINING CHESS CLASS.          05-16-2022 06-08-2022   P  C  P     6
CAA         BEGINNERS DRAWING              05-16-2022 06-08-2022   P  C  P    10
CAA         HEALTH FAIR                    03-30-2022 04-15-2022   P  C  P     2
CAA         INTRODUCTION TO RECREATION     12-20-2021 01-03-2022   P  C  P     4
CAA         ORIGAMI                        03-17-2021 05-03-2021   P  C  P     4
CAA         BEGINING CHESS CLASS.          02-23-2021 04-05-2021   P  C  P     6
CAA         NUTRITION                      10-20-2014 11-25-2014   P  C  P    14
CAA         RPP6 REVIEWING MY DRUG USE     01-29-2014 01-29-2014   P  C  P     2
CAA         BARBER CLASS                   09-16-2013 10-18-2013   P  C  P     9
CAA         AUTOMOTIVE MAINTENANCE         07-15-2013 09-03-2013   P  C  P     9
NYM M       SHU DECIMALS SELF-STUDY        02-01-2012 02-15-2012   P  C  P    12
NYM M       SHU SELF STUDY LIFE SCIENCE    01-09-2012 02-15-2012   P  C  P    10




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```



**U. S. Department of Justice**

Federal Bureau of Prisons

---

**USP Canaan**
3057 Easton Turnpike
Waymart, PA 18472

December 2, 2020

NOTIFICATION FOR THE INMATE POPULATION

FROM:            E. Bradley, Warden

SUBJECT:            COVID Update

As all of you are aware, we have identified multiple cases of COVID-19 at USP Canaan. Confining you in your cells is not what any of us want. However, Medical staff are concerned this outbreak could lead to additional transmissions. The Executive Staff are not utilizing this quarantine status for disciplinary reason, but rather for your safety to mitigate the virus.

The last several months have been a challenge for all of us. Unfortunately, this has resulted in the suspension of many routine activities, leading up to our current quarantine status. Our focus has been to return to normal as soon as possible. We have discussed a shower plan, and providing a way to maintain communication with your families. Staff will begin issuing stamps to each of you this week. The distribution of limited commissary is also something we are discussing for the near future.

I can assure you that both staff and inmate safety is our main focus as we try to make it through this Pandemic.

BP-S324.052 **WORK PERFORMANCE RATING - INMATE** CDFRMOCT 98
**U.S. DEPARTMENT OF JUSTICE**                                         **FEDERAL BUREAU OF PRISONS**

| Inmate's Name *Reed Gregory* | Register No. *65170-054* | Unit *C1-117U* |
|---|---|---|
| Evaluation Period **APRIL 2014** | Work Assignment : *band* | |

Bonus Justification *Good worker. Has been painting for Mr thomas*

Signature and Date of Dept. Head Approval

Instructions: Circle the best statement in each area.   Base your rating on the inmate's overall performance for the rating period—neither the inmate's best day nor worst day—as compared to what is expected of a
satisfactory worker in the assignment.

**A. QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing Worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn,   no matter how hard trying.
2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will fool up, get in trouble, or wander off.  Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and  dependable.
4. Needs little supervision. Good record of dependability an promptness.
5. No supervision required. Completely dependable in all things.

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.
5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours       in the community would you:

1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**

1. Performance Pay - Grade Class   1 - 2 - 3 - 4 - M.

2. Hours of Satisfactory work _____ *168*

3. Regular Pay _____ *48.72*

4. Bonus Recommended: *24.36* yes; _____ no

5. Total Pay _____ *73.08*

Supervisor's Signature :

Inmate's Signature

Inmate _____ was requested to sign this rating,
but refused, citing the following reason:

_____

_____

*Staff Witness' Signature*

BP-S324.052 **WORK PERFORMANCE RATING - INMATE** CDFRMOCT 98
**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| Inmate's Name  Reed, Gregory | Register No.  65170-054 | Unit  C1-117 |
|---|---|---|
| Evaluation Period   May 2014 | Work Assignment:  USP Landscape | |

Bonus Justification

Signature and Date of Dept. Head Approval

Instructions: Circle the best statement in each area.   Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a
satisfactory worker in the assignment.

**A. QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
5. Outstanding. Does superior work.

**B. QUANTITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing Worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to  improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn,    no matter how hard trying.
2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off.  Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and  dependable.
4. Needs little supervision. Good record of dependability on promptness.
5. No supervision required. Completely dependable in all things.

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.
5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours     in the community would you:
1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
1. Performance Pay - Grade Class  1 (2) 3 - 4 - M.       14
2. Hours of Satisfactory work
3. Regular Pay        4. 06
4. Bonus Recommended: _____ yes;  X  no
5. Total Pay        4. 06

**Supervisor's Signature :**

**Inmate's Signature:**

Inmate _____ was requested to sign this rating,
but refused, citing the following reason:

Inmate is no longer in facilities

**Staff Witness' Signature**

BP-S324.052 **WORK PERFORMANCE RATING - INMATE** CDFRMOCT 98
**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| Inmate's Name Reed . Gregory | Register No. 65176-054 | Unit C1-117U |
|---|---|---|
| Evaluation Period    March 2014 | Work Assignment:  USP  land | |

Bonus Justification
*Snow shovler*

Signature and Date of Dept. Head Approval

Instructions: Circle the best statement in each area.   Base your rating on the inmate's overall performance for the rating period—neither the inmate's best day nor worst day—as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing Worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn,   no matter how hard trying.
2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off.  Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and  dependable.
4. Needs little supervision. Good record of dependability on promptness.
5. No supervision required. Completely dependable in all things.

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.

5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours       in the community would you:
1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**

1. Performance Pay - Grade Class   1 - 2 - 3 - 4 - M.

2. Hours of Satisfactory work _____ 168

3. Regular Pay _____ 48.72

4. Bonus Recommended: 24.36 yes; _____ no

5. Total Pay _____ 73.08

Supervisor's Signature : _____

Inmate's Signature: _____

Inmate _____ was requested to sign this rating, but refused, citing the following reason: _____

Staff Witness' Signature

BP-S324.052 **WORK PERFORMANCE RATING - INMATE** CDFRMOCT 98
**U.S. DEPARTMENT OF JUSTICE**                                        **FEDERAL BUREAU OF PRISONS**

| Inmate's Name: Reed. Gregory | Register No. 65176-054 | Unit C1-1170 |
|---|---|---|
| Evaluation Period March 2014 | Work Assignment: USP  land | |

Bonus Justification
_Snow shovler_

Signature and Date of Dept. Head Approval

Instructions: Circle the best statement in each area.   Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a
satisfactory worker in the assignment.

**A. QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level.
4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing Worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn,   no matter how hard trying.
2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will fool up, get in trouble, or wander off.  Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and  dependable.
4. Needs little supervision. Good record of dependability on promptness.
5. No supervision required. Completely dependable in all things.

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.

5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours    in the community would you:

1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**

1. Performance Pay - Grade Class  1 / 2 / 3 - 4 - M.

2. Hours of Satisfactory work _____ 168

3. Regular Pay _____ 48.72

4. Bonus Recommended: 24.36 yes; _____ no

5. Total Pay  73.08

Supervisor's Signature :

Inmate's Signature:

Inmate _____ was requested to sign this rating, but refused, citing the following reason:

Staff Witness' Signature

BP-S324.052 **WORK PERFORMANCE RATING - INMATE** CDFRMOCT 98
U.S. DEPARTMENT OF JUSTICE                                   FEDERAL BUREAU OF PRISONS

| Inmate's Name _Reed, Gregory_ | Register No. _65170-054_ | Unit _C1-117_ |
|---|---|---|
| Evaluation Period   February 2014 | Work Assignment: USP  _LANDSCAPE_ | |

Bonus Justification
_Snow shoveler_

Signature and Date of Dept. Head Approval

---

Instructions: Circle the best statement in each area.   Base your rating on the inmate's overall performance for the rating period—neither the inmate's best day nor worst day—as compared to what is expected of a
satisfactory worker in the assignment.

**A. QUALITY OF WORK**
1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
2. Fair. Careless; makes mistakes and does not check work. Should do better work.
3. Satisfactory. Makes some mistakes but no more than expected at this level. Does Journeymen level work.
4. Good. Makes fewer mistakes than most inmates at this level of training.
5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
1. Unsatisfactory. Lazy, wastes time, goofs off.
2. Fair. Does just enough to get by. Has to be prodded occasionally.
3. Satisfactory. Works steadily but does not push self.
4. Good. Willing Worker. Does a full day's work and wastes little time.
5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
2. Fair. Usually relies on others to say what needs to be done.
3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
2. Fair. Shows minimal interest but not very eager to learn.
3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to  improve skills.
5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn,  no matter how hard trying.
2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
1. Needs constant supervision. If left unsupervised will fool up, get in trouble, or wander off.  Undependable.
2. Needs closer supervision than most. Not very dependable.
3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and  dependable.
4. Needs little supervision. Good record of dependability on promptness.
5. No supervision required. Completely dependable in all things.

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
1. Poor. Resentful and hostile. May argue with supervisor.
2. Fair. Resists or ignores suggestions.
3. Satisfactory. Generally does what is told without any fuss.
4. Good. No hostility or resentment. Tries to improve.
5. Outstanding. Makes a real effort to please the instructor. Does exactly as told.

**H. ABILITY TO WORK WITH OTHERS**
1. Poor. Negativistic, hostile, annoying to others.
2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
4. Good. Friendly, congenial, helpful; others like to work with.
5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours        in the community would you:

1. Fire or lay off that individual?
2. Transfer the person to a less demanding job at a lower pay scale?
3. Continue to employ the person but without a raise or promotion this time?
4. Raise the person's pay but keep the person at the same job?
5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**

1. Performance Pay - Grade Class   1 - 2 - 3 - 4 - M.

2. Hours of Satisfactory work _____ _189_

3. Regular Pay _____ _54.81_

4. Bonus Recommended: _27.40_ yes; _____ no

5. Total Pay  _82.21_

Supervisor's Signature :

Inmate's Signature

Inmate _____ was requested to sign this rating,
but refused, citing the following reason:

_____

_____

Staff Witness' Signature



### Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: REED, GREGORY  65170-054

SEQUENCE : 00323878
Report Date: 08-23-2022

| Assignment | Description | Start |
|---|---|---|
| NO ASSIGNMENTS | | |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 09-26-2016 |
| ED COMP | DRUG EDUCATION COMPLETE | 04-21-2014 |
| NR COMP | NRES DRUG TMT/COMPLETE | 01-30-2014 |

### Physical and Mental Health Summary

** No notes entered **

### FRP Payment Plan

Most Recent Payment Plan

FRP Assignment:    NO OBLG    FINANC RESP-NO              Start: 03-21-2018

Inmate Decision:   AGREED        $25.00         Frequency: QUARTERLY
Payments past 6 months:      $0.00       Obligation Balance: $0.00

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $300.00 | $150.00 | IMMEDIATE | EXPIRED |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

### Financial Responsibility Summary

At the time of sentencing, he was ordered to pay a $300 felony assessment.   This obligation has expired.

### Release Planning

He plans on residing in New York.

### General Comments

During the COVID-19 pandemic he was assigned to mitigate the spread of the virus through sanitation and disinfecting the prison.  He excelled in this area and continues to do so today.



U.S. Department of Justice

Federal Bureau of Prisons

United States Penitentiary Canaan

3057 Eric J. Williams Memorial Drive
Waymart, PA 18472

08-29-2022

MEMORANDUM : TO WHOM IT MAY CONCERN

FROM: UNIT MANAGER T. FRY

SUBJECT: Gregory Reed #65170-054

Inmate REED, G #65170-054 has been assigned to mitigate the
spread of the COVID-19 Virus. REED has performed these duties around
the prison. He has excelled in his duties. Mr. REEDs positive attitude
toward Staff and his work performance has earned him a Head Orderly
position which consists of working with and training fellow inmates
in the proper and safe handling of caustic chemicals. REED is also
assigned to pass out weekly supplies to indigent inmates so these
individuals can maintain proper hygene and sanitation. REED has gained
employable work skills through his assignment as a Head Orderly.

F-1 UNIT ORDERLY RESPONSIBILITIES
UPDATED: August 14, 2022

To maximize protection from the Delta variant and prevent possibly spreading it to others, get vaccinated as soon as you can and wear a mask indoors in ALL common areas of the housing unit.

| NAME | REG NO | CELL | JOB ASSIGNMENT |
|------|--------|------|----------------|
| REED, GREGORY(HEAD ORDERLY) | 65170-050 | F02-201U | **Head Orderly:** Responsible for passing out weekly supplies from the warehouse and Safety Departments when instructed by Unit Team Staff Assist as needed to maintain sanitation within the Housing Unit. It is imperative to clean more frequently or choose to disinfect (in addition to cleaning) in this high traffic area or if certain conditions apply that can increase the risk of infection from touching surfaces: Immediately after disinfecting, <u>wash your hands</u> with soap and water for 20 seconds. Be sure to wash your hands immediately after removing gloves.  USP Canaan adheres to **ALL** Centers for Disease Control and Prevention (CDC) guidelines and recommendations to keep everyone safe during this pandemic. Focus on high-touch surfaces such as **cell door handles, tables, light switches, and unit phones.** Clean other surfaces in your cell as needed. |
| SPICER | 65870-067 | | |

```
  CAADW           *        INMATE EDUCATION DATA        *    08-01-2022
PAGE 001 OF 001 *              TRANSCRIPT               *    13:06:08

REGISTER NO: 65170-054      NAME..: REED                     FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: CAA-CANAAN USP


-------------------------- EDUCATION INFORMATION --------------------------
FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
CAA  ESL HAS    ENGLISH PROFICIENT          05-16-2013 1302 CURRENT
CAA  GED HAS    COMPLETED GED OR HS DIPLOMA  05-16-2013 1309 CURRENT


--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL   DESCRIPTION                 START DATE  STOP DATE EVNT AC LV  HRS
CAA        ADVANCED DRAWING            07-25-2022 CURRENT
CAA        BEGINING CHESS CLASS.       05-16-2022 06-08-2022  P  C  P    6
CAA        BEGINNERS DRAWING           05-16-2022 06-08-2022  P  C  P   10
CAA        HEALTH FAIR                 03-30-2022 04-15-2022  P  C  P    2
CAA        INTRODUCTION TO RECREATION  12-20-2021 01-03-2022  P  C  P    4
CAA        ORIGAMI                     03-17-2021 05-03-2021  P  C  P    4
CAA        BEGINING CHESS CLASS.       02-23-2021 04-05-2021  P  C  P    6
CAA        NUTRITION                   10-20-2014 11-25-2014  P  C  P   14
CAA        RPP6 REVIEWING MY DRUG USE  01-29-2014 01-29-2014  P  C  P    2
CAA        BARBER CLASS                09-16-2013 10-18-2013  P  C  P    9
CAA        AUTOMOTIVE MAINTENANCE      07-15-2013 09-03-2013  P  C  P    9
NYM M      SHU DECIMALS SELF-STUDY     02-01-2012 02-15-2012  P  C  P   12
NYM M      SHU SELF STUDY LIFE SCIENCE 01-09-2012 02-15-2012  P  C  P   10
```

```
G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# U.S.P. CANAAN

## CERTIFICATE OF ACHIEVEMENT
### AWARDED TO:

# Gregory Reed (65170-054)

*ARTHRITIS FOUNDATION - WALK WITH EASE CLASS*

RECREATION DEPARTMENT

JUNE 2021

# U.S.P. CANAAN

## CERTIFICATE OF ACHIEVEMENT AWARDED TO:

# Gregory Reed (65170-054)

*LIVING A HEALTHY LIFE WITH CHRONIC CONDITIONS*

RECREATION DEPARTMENT

JUNE 2022

# Certificate of Completion

This certifies that:

## Gregory Reed (65170-054)

Completed the Non-Residential
Drug Abuse Program at the
**United States Penitentiary, Canaan, PA**



T.Cowen, Drug Treatment Specialist

January 22, 2014