UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>against<br><br>GREGORY REED,<br><br>Defendant. | No. 11-cr-487-1 (RJS)<br><br>STATEMENT OF REASONS |

RICHARD J. SULLIVAN, Circuit Judge:

As stated on the record at the resentencing proceeding held on February 21, 2023, the Court granted Gregory Reed's motion under 28 U.S.C. § 2255 to vacate his conviction and sentence under Count Three of the Indictment because, under binding precedent, Reed's convictions under Counts One and Two for Hobbs Act robbery conspiracy and attempted Hobbs Act robbery no longer qualify as categorical crimes of violence to sustain his Count Three conviction under 18 U.S.C. § 924(j). *See United States v. Davis*, 139 S. Ct. 2319 (2019); *United States v. Taylor*, 142 S. Ct. 2015 (2022); *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). The Court subsequently resentenced Reed to an aggregate term of 37 years' imprisonment on Counts One and Two of the Indictment. In reaching this decision, the Court determined that Reed's total offense level under the advisory United States Sentencing Guidelines is 43 and that his criminal history placed him in Criminal History Category VI. Although this would ordinarily result in a Guidelines range of life

imprisonment, Reed's range was capped at 40 years because the statutory maximum sentence for each count of conviction was 20 years. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); *see also* § 5G1.2, App. Notes 1, 3(A). The Court's reasoning for imposing a below-Guidelines sentence in this matter, as stated on the record during the resentencing proceeding, is amplified below.

The base offense level for a violation of 18 U.S.C. § 1951 is 20 under section 2B3.1 of the Guidelines. The cross reference under section 2B3.1(c) further provides that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply [section] 2A1.1 (First Degree Murder)." U.S.S.G. § 2B3.1(c). Section 2A1.1, in turn, provides a base offense level of 43. *See* U.S.S.G. § 2A1.1(a).

Here, "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." U.S.S.G. § 2B3.1(c). As the grand jury charged in the indictment and as the trial jury found beyond a reasonable doubt after deliberations, on or about December 1, 2007, Reed and his coconspirators "caused the death of Bernardo Garcia[] by discharging, and aiding and abetting the discharge, of a firearm at Garcia," which "killing is murder as defined in Title 18, United States Code, [s]ection 1111(a)." Indictment at 3; *see also* Trial Tr. 1950 ("The third element that the government must prove

2

beyond a reasonable doubt on Count Three is that the defendant you are considering caused the death of another person through the use of that firearm . . . . The fourth element of Count Three that the government must prove beyond a reasonable doubt is that the death of a person qualifies as a murder . . . [under] section 1111 of the federal criminal code."). Given the jury's finding beyond a reasonable doubt that Reed "caused the death of [Garcia] through the use of [a] firearm" and that "the death of [Garcia] qualifie[d] as a murder . . . [under] section 1111 of the federal criminal code," Trial Tr. 1950, section 2B3.1(c)'s cross reference plainly applies to Reed, *see, e.g.*, *United States v. Bryant*, No. 18-cr-92 (WFK), 2023 WL 1869541, at *4, 10 (E.D.N.Y. Feb. 9, 2023) (applying section 2B3.2(c)'s cross reference to a defendant whose coconspirator shot and killed a victim during an extortion attempt, even though the coconspirator "stated [that] he did not mean to shoot anybody" after the crime); *United States v. Hernandez-Lora*, No. 10-cr-776-1 (RWS), 2013 WL 5366067, at *6 (S.D.N.Y. Sept. 23, 2013) (applying section 2B3.1(c)'s cross reference because one of the defendant's coconspirators suffocated the victim to death while attempting to restrain him during the robbery). Although the Second Circuit's guidance on this issue is sparse, other courts of appeals have consistently affirmed the district court's application of section 2B3.1(c)'s cross reference in cases similar to this. *See, e.g.*, *United States v. Rodriguez-Adorno*, 695 F.3d 32, 43 (1st Cir. 2012) (holding that it was "enough to apply the murder cross reference" to the defendant when "the victim was shot and killed by [the defendant]'s coconspirator in the

3

course of the carjacking"); *United States v. Williams*, 342 F.3d 350, 352, 357 (4th Cir. 2003) (concluding that "the murder enhancement under [section] 2B3.1(c)" was applicable to the defendant because his coconspirator "killed a drug dealer" during their attempt to "rob [rival] drug dealers for their drugs and money"); *United States v. Harris*, 104 F.3d 1465, 1474 (5th Cir. 1997) (affirming the district court's application of section 2B3.2(c)'s cross reference where the defendant's coconspirator shot and killed a bystander "in the aftermath of the bank robbery" at the robbers' rendezvous point); *United States v. Harris*, 238 F.3d *777*, 779 (6th Cir. 2001) (holding that "the cross reference found in [section] 2B3.1(c)(1)" applied to both defendants because one of them shot a customer during their attempted robbery of a convenience store); *see also United States v. Weasel Bear*, 356 F.3d 839, 841 (8th Cir. 2004) ("The cross reference in [section] 2B3.1(c)(1) to the first degree murder guideline in [section] 2A1.1 requires a sentencing court to consider the full context of the defendant's offense and to account for *any* killing in the course of a federal robbery." (emphasis added)).

On resentencing, Reed joins his codefendant Ronnie Gonzalez's argument that the killing of Garcia does not constitute his "relevant conduct" for purposes of applying section 2B3.1(c)'s cross reference because it falls outside the definition of relevant conduct under section 1B1.3(a)(1). Although the Court has already rejected this argument in connection with Gonzalez's resentencing, the Court nevertheless addresses it here as applied to Reed.

4

Section 1B1.3(a)(1) provides that "cross references in Chapter Two . . . shall be determined on the basis of the following":

(A) all acts and omissions committed, aided, abetted . . . by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were –

    (i) within the scope of the jointly undertaken criminal activity,

    (ii) in furtherance of that criminal activity, and

    (iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a); *see also United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995) ("In order for a district court to sentence a defendant on the basis of criminal activity conducted by a coconspirator," a district court must find: "1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant.").

Based on the evidence adduced at trial, the jury found beyond a reasonable doubt that Reed "caused the death of [Garcia] through the use of a firearm" either under a conspiracy or an aiding-and-abetting theory. *See* Trial Tr. 1944–56. Beginning with the conspiracy theory, the Court instructed the jury that Reed may be convicted on

Count Three if, among other things, the jury found "beyond a reasonable doubt (1) that [Reed] was a member of the robbery conspiracy charged in Count One"; (2) that "the crime charged in Count Three . . . was committed pursuant to the common plan and understanding [that the jury] found to exist among the conspirators"; (3) that Reed "was a member of the conspiracy at the time the crime charged in Count Three was committed"; and (4) that Reed "could reasonably have foreseen that the crime charged in Count Three might be committed by his coconspirators." Trial Tr. 1954–56.

Alternatively, the Court also instructed the jury that it could find Reed "guilty of the substantive crime charged in Count Three [if] the government prove[d] beyond a reasonable doubt that [Reed] personally committed or aided and abetted the commission of the substantive crime charged." Trial Tr. 1955–56. In explaining aider-and-abettor liability, the Court instructed the jury that it "may find [Reed] guilty of the substantive crime" if (1) "another person actually committed the crime"; (2) Reed "willfully and knowingly associate[d] himself in some way with the crime"; and (3) Reed "willfully and knowingly sought by some act to help make the crime succeed." Trial Tr. 1953.

The jury found Reed guilty on Count Three, *see* Trial Tr. 2005, and although the verdict form did not require the jury to specify under which theory (conspiracy or aiding and abetting or both) the jury relied on, there was ample evidence in the record to support the jury's verdict under either theory beyond a reasonable doubt. Indeed, it is telling that Reed did not challenge the sufficiency of the evidence on Count Three as part of his direct

6

appeal or in his initial habeas petition.[1] *See United States v. Reed*, 570 F. App'x 104 (2d Cir. 2014), *cert. denied sub. nom. Reed v. United States*, 574 U.S. 985 (2014); *see also* Doc. No. 154.

In challenging this finding, Gonzalez (and now Reed) seize on a stray line of testimony from Donnell Richardson, the organizer of the robbery and a cooperating witness at trial, stating that he "didn't think there would be any violence necessary" during the robbery because the targets "were young, weak, [and] frail." Trial Tr. 711. But the trial evidence clearly showed that Reed, Gonzalez, and John Johnson rejected Richardson's advice on this point. In fact, Reed repeatedly insisted that guns be brought to the robbery. *See, e.g.*, Trial Tr. 527:23–528:4. And on the day of the robbery, Reed advised the coconspirators that he was armed and demanded that Richardson supply *another* gun so that Johnson could also have a gun during the robbery. *See* Trial Tr. 532:12–533:16. When Richardson again reiterated his view that "they didn't need really the other gun," Reed was adamant that "the only way he[] [was] going to do [the robbery was]" to bring with him "[an]other gun." Trial Tr. 535:21–536:1. Richardson ultimately relented and gave his gun to Reed, who handed it to Johnson. Only then did Reed, Johnson, and Gonzalez enter the apartment building to carry out the planned robbery, during which Reed fired the first gunshot. *See* Trial Tr. 539, 545–46, 716:18–24, 1081–85. On the basis of

---

[1] Reed's section 2255 motion asserted a challenge to Count Three based on *United States v. Davis*, 139 S. Ct. 2319 (2019) and *United States v. Barrett*, 937 F.3d 126, 130 (2d Cir. 2019), which turned on whether Hobbs Act conspiracy and attempted Hobbs Act robbery constituted *categorical* crimes of violence under sections 924(c) and 924(j). But at no time prior to resentencing did Reed argue that there was insufficient evidence to prove the other elements of the section 924(j) violation charged in Count Three.

this testimony, the jury was justified in concluding that "the scope of the activity to which [Reed] agreed was sufficiently broad to include" the killing of Garcia. *United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013).

In adopting Gonzalez's arguments with respect to the application of section 2B3.1(c)'s cross reference, Reed also relies on *United States v. Johnson* to argue that the killing of Garcia was not "within the scope of the specific conduct and objectives embraced by the agreement." 378 F.3d 230, 238 (2d Cir. 2004) (internal quotation marks omitted). But such reliance on *Johnson* is misplaced. In that case, the jury convicted Johnson of conspiring to commit Hobbs Act extortion for his participation in a "labor coalition" that "extort[ed] money and jobs, including the proverbial 'no-show' jobs, from contractors at construction sites in New York City." *Id.* at 234. During the course of the conspiracy, one of Johnson's coconspirators killed a member of a rival labor coalition during a confrontation. At sentencing, the district court determined that the murder constituted Johnson's "relevant coconspirator conduct" and applied the cross reference under section 2B3(c)(1). *Id.* at 235. Among other things, the district court based its determination on the fact (1) that the coconspirator "worked for Johnson"; (2) that Johnson often instructed the coconspirator to "page him with updates"; (3) that "Johnson had instructed [the coconspirator] to ensure protection of [the labor coalition's] interests 'in any way necessary'"; (4) that the coconspirator "informed Johnson that there was trouble" at his work site; (5) that the coconspirator told Johnson, "on an occasion

unrelated to the . . . murder," that he was at a work site with his "machine gun"; and (6) "most notably," that "well after [the murder], a third party – *not* Johnson – had recommended to [the coconspirator] that he approach Johnson to ask for a fee" for the murder. *Id.* at 238–39. The Second Circuit vacated the sentence, concluding that the district court "clearly erred in finding that Johnson was part of an agreement to murder [the victim]," since "there [was] not even a suggestion in the record that Johnson was aware of the third-party recommendation, let alone designed, condoned, or failed to condemn it." *Id*. at 239.

*Johnson* is clearly distinguishable from this case. For starters, "none of the defendants [in *Johnson*] was convicted by the jury of any charge relating specifically to . . . the murder." *Id.* at 234. Here, by contrast, *all* of the coconspirators – including Reed – were convicted by the jury on Count Three, which, as discussed above, included among its elements that he "caused the death of [Garcia] through the use of that firearm" and that Garcia's "death . . . qualifies as a murder . . . [under] section 1111 of the federal criminal code." Trial Tr. 1950. Moreover, the attenuated connection between the appellant and the murder in *Johnson* bears no resemblance to the facts of this case. In *Johnson*, there was no evidence suggesting that Johnson was present at the murder or even had any knowledge of it. Instead, the only connection between Johnson and the murder was Johnson's broad, "supervisory" relationship with the coconspirator. *Johnson*, 378 F.3d at 236. Here, on the other hand, Reed told his coconspirators that "he needed to

9

bring a gun" to the planned robbery, Trial Tr. 527:25–528:1; demanded that Richardson provide "another gun" for Johnson to use during the robbery, Trial Tr. 533:15–16; carried a gun with him as he entered the apartment building, *see* Trial Tr. 539–42; and when the robbery targets tried to run away, "fired . . . a warning shot into the air" moments before Johnson shot and killed Garcia, Trial Tr. 716:18–24; *see also* Trial Tr. 545–46, 1081–85. Simply put, the killing of Garcia was an activity "jointly undertaken" by Reed and his coconspirators in furtherance of the planned robbery of a drug spot in broad daylight. *Studley*, 47 F.3d at 576. Unlike the appellant in *Johnson*, Reed was neither a dupe nor a peripheral player removed from the action. He insisted on the carrying of two firearms to the planned robbery and understood the reasonable prospect of the guns being fired and individuals being shot and killed in furtherance of the robbery. *See* Trial Tr. 535: 21–536:1.

In joining Gonzalez's section 2B3.1(c) arguments, Reed also relies on dicta from *Rosemond v. United States*, 572 U.S. 65, 76–77 (2014), to contend that he "did not aid and abet Johnson's murder of Garcia." Gonzalez Resentencing Mem. at 6. But when read in full, *Rosemond* clearly supports a finding that Reed "caused the death of Bernardo Garcia[] by . . . aiding and abetting the discharge . . . of a firearm at Garcia." Indictment at 3. In *Rosemond*, the Supreme Court held that "[a]n active participant in a drug transaction has the intent needed to aid and abet a [section] 924(c) violation" if he "knows beforehand of a confederate's design to carry a gun." *Rosemond*, 572 U.S. at 77–78. The Supreme Court

10

explained that when a defendant has "advance knowledge that the plan included a firearm," he could "attempt to alter that plan or, if unsuccessful, withdraw from the enterprise." *Id.* at 78. But if the defendant decides "instead to go ahead with his role in the venture," his decision "shows his intent to aid an *armed* offense." *Id.* Here, Reed had "advance knowledge that the plan included [two] firearm[s]," since he insisted on bringing two guns to the robbery contrary to Richardson's advice. *Id.* In fact, the record demonstrates that "the only way" that Reed was going to carry out the planned robbery was to bring with him – in addition to his own gun – "[an]other gun" supplied by Richardson. *See* Trial Tr. 535: 21–536:1. Instead of "attempt[ing] to alter" the plan or "withdraw[ing] from the enterprise," Reed fired the first gunshot when Luis Navarro – one of the robbery targets – started to run away, prompting Johnson to fire at Garcia and ultimately kill him. *Rosemond*, 572 U.S. at 78; *see also* Trial Tr. 539, 545–46, 716:18–24, 1081–85. Therefore, *Rosemond* supports a finding that Reed had "the intent needed to aid and abet [Johnson's] [section] 924(c) violation," *id.*, which the jury found to "qualif[y] as a murder . . . [under] section 1111 of the federal criminal code," Trial Tr. 1950.

Reed also joins Gonzalez's argument that the Court may not rely on the jury's determination with respect to Count Three because "[t]he jury's verdict" on that count is "a nullity" following the Supreme Court's decisions in *Davis* and *Taylor* and the Second Circuit's decision in *Barrett*. Gonzalez Resentencing Mem. at 8. Once again, the Court disagrees. *Davis*, *Taylor*, and *Barrett* concern only one element of Reed's conviction under

11

Count Three – whether "robbery conspiracy and attempted robbery . . . qualify as crimes of violence" under section 924(c).  Trial Tr. 1950; *see also United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that section 924(c)'s residual clause is unconstitutionally vague); *United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022) (holding that attempted Hobbs Act robbery does not qualify as a categorical crime of violence under section 924(c)); *United States v. Barrett*, 937 F.3d 126, 130 (2d Cir. 2019) (holding that Hobbs Act robbery conspiracy does not qualify as a categorical crime of violence under section 924(c)).  The Court's application of section 2B3.1(c) of the Guidelines, however, turns on other elements of the jury's verdict that are unaffected by *Davis* and its progeny, including whether Reed "caused the death of [Garcia] through the use of that firearm" and whether the killing of Garcia "qualifie[d] as a murder . . . [under] section 1111 of the federal criminal code."  Trial Tr. 1950.  Most significantly, *Davis* and its progeny require that – for purposes of *conviction* – courts adopt the "*categorical* approach to determine whether an offense qualified as a crime of violence" by "disregard[ing] how the defendant actually committed his crime" and instead "imagin[ing] the idealized ordinary case of the . . . crime."  *Davis*, 139 S. Ct. at 2326 (emphasis added) (internal quotation marks omitted).  For purposes of *sentencing*, however, "the focus" of the Court's determination "is on the *specific* acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range."  U.S.S.G. § 1B1.3 App. Note 1 (emphasis added).  In light of the procedural posture and legal questions at issue in *Davis*, *Taylor*,

and *Barrett*, the Court declines to adopt Reed's and Gonzalez's expansive interpretation of those cases to find that the jury's factual determination regarding Count Three "no longer . . . exist[s]." Gonzalez Resentencing Mem. at 8. At the very least, the jury's findings with respect to Count Three bolster the Court's own conclusion that Garcia "was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States." U.S.S.G. § 2B3.1(c).

In short, the jury was justified in finding beyond a reasonable doubt – and the Court certainly finds by a preponderance of the evidence – that the killing of Garcia was something that Reed "willfully and knowingly associate[d] himself . . . with" and "sought by some act to help make . . . succeed." Trial Tr. 1953. The Court is also persuaded that the murder was "within the scope of the jointly undertaken criminal activity, . . . in furtherance of that criminal activity, and . . . reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a). The Court therefore finds that the killing of Garcia constituted Reed's "relevant conduct" under section 1B1.3(a)(1), and that Reed is subject to the murder cross reference under section 2B3.1(c).

Finally, even if it could be argued, or is in fact ultimately determined, that Reed's total offense level is what defense counsel suggested at the resentencing hearing, it would have had no impact on the sentence in this case given that the Court would have imposed the same sentence in light of all the objectives of sentencing set forth in 18 U.S.C. § 3553(a).

13

Given Reed's extensive criminal history – which includes convictions for robberies, drug sales, drug possessions, weapon possessions, and notably, attempted assault in the first degree for what amounted to a forcible rape, *see* Original PSR at ¶¶ 34–62; his significant role in planning the robbery, recruiting Johnson, insisting on bringing two guns to the robbery, firing the first shot, and putting into play what resulted in the death of Garcia; and his numerous violations while in custody for this offense – including several fights with other inmates, possessions of dangerous weapons and alcohol – the Court concluded that an aggregate sentence of 37 years was "sufficient, but not greater than necessary to [accomplish] the purposes of [sentencing]" set forth in section 3553(a), regardless of the technical calculations and interpretations of any particular Guidelines provisions.[2]  18 U.S.C. § 3553(a); *see also United States v. Byors*, 586 F.3d 222, 225 (2d Cir. 2009) ("Following *United States v. Booker*, 543 U.S. 220 (2005), a district court has broad latitude to impose either a Guidelines sentence or a non-Guidelines sentence." (internal quotation marks omitted)); *United States v. Kent*, 821 F.3d 362, 367–68 (2d Cir. 2016) ("If [the Court of Appeals] identif[ies] procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand

---

[2] The Court acknowledges the positive steps that Reed has taken while in custody, including the fact that he has not committed any disciplinary violation in the past three and a half years, *see* Doc. No. 192 at 26; is working and taking educational courses, *see id.* at 30; Reed Resentencing Mem. at 15–26; and has expressed sincere remorse for his offense and recognized the opportunity provided by the vacatur of his section 924(j) conviction, *see* Reed Resentencing Mem. at 10, all of which persuaded the Court that a below-Guidelines sentence of 37 years was appropriate.

the case for resentencing." (internal quotation marks omitted)); *United States v. Cavera*, 550 F.3d 180, 197 (2d Cir. 2008) (en banc) (holding same).

\* \* \*

For these reasons, as well as those stated on the record at the resentencing hearing held on February 21, 2023, the Court imposed a sentence of twenty years on Count One and seventeen years on Count Two, to run consecutively, with credit for the time that Reed has already served dating back to May 19, 2011 (minus any good time disallowances). *See* 18 U.S.C. § 3585(b). The Court also recommended that the Bureau of Prisons designate Reed to serve his sentence at the United States Penitentiary in Canaan, Pennsylvania.

In addition, because Reed has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability with respect to his section 2255 motion, *see Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the Court's decision with respect to Reed's section 2255 motion would not be taken in good faith and, therefore, Reed may not proceed *in forma pauperis*, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The

Clerk of Court is respectfully directed to terminate the motions pending in Case No. 11-cr-487-1, Doc. Nos. 154 and 172.

SO ORDERED.

Dated:   March 1, 2023
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation